IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JONATHAN S. WALLACE, | * | |
| Plaintiff, | * | |
| v. | * | |
| PRINCE GEORGE'S COUNTY DETENTION CENTER, | * | Civil Action No. GLR-19-2464 |
| CORIZON HEALTH SERVICES, ARAMARK CORPORATION, | * | |
| MARY LOU MCDONOUGH, BENJAMIN PELLERIN, and | * | |
| DR. MESKI,[1] | * | |
| Defendants. | * | |

***

# **MEMORANDUM OPINION**

On August 22, 2019, Plaintiff Jonathan S. Wallace filed the above-captioned Complaint, pursuant to 42 U.S.C. § 1983, alleging that he slipped, fell, and was injured in the kitchen at the Prince George's County Detention Center ("PGCDC") because of Defendants PGCDC, Corizon Health Services ("Corizon"), and Aramark Corporation's ("Aramark") negligence. (ECF No. 1). For reasons set forth below, the Complaint will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).[2]

---

[1] The Clerk shall amend the docket to add Mary Lou McDonough, Benjamin Pellerin, and Dr. Meski as Defendants.

[2] Wallace filed a Motion for a Change of Address and to File Two Declarations (ECF No. 8), which will be granted.

## I.  BACKGROUND

Wallace alleges that on December 24, 2018, he was stirring a pot in PGCDC's kitchen, when he slipped, fell, and hit his head against a pot and then the concrete, causing injuries to Wallace's neck and back.[3] (Compl. at 2). When he fell, Wallace was not wearing slip resistant boots and the pot he was stirring was not bolted to the floor. (Id.). Wallace alleges that Mary Lou McDonough, PGCDC's Director, is responsible for his safety and for the "upkeep of the kitchen and its equipment." (Suppl. Compl. at 1, ECF No. 7; see also Mot. Change Address and Decl. ["Pl.'s Mot."] at 3, ECF No. 8) Wallace further alleges that Benjamin Pellerin, an Aramark manager, does not require inmates to wear slip resistant boots in the kitchen; failed to instruct McDonough to fix the leaking pots; and neglected to install slip resistant strips or mats around the cooking area. (Suppl. Compl. at 2).

Wallace was treated by Dr. Meski on December 24, 2018. (Suppl. Compl. at 2). Wallace complained, although he does not state when, that he was having severe neck and back pain, but Dr. Meski only gave him pain medication. (Id.). Wallace alleges that after months of complaining about his neck, a physician's assistant ordered an x-ray of his neck. (Id.). Wallace informed Dr. Meski that he was having pain down the back of his legs and neck and hearing cracking noises when he turned his head. (Id.). According to Wallace, "Dr. Meski looked at the x-ray and told him that everything was fine except some closure between [his] disk." (Id.).

On August 22, 2019, Wallace, proceeding pro se, sued Defendants PGCDC,

---

[3] Wallace is presently incarcerated at Eastern Correctional Institution.

Corizon, and Aramark for negligence. (ECF No. 1; see also Addendum to Relief ["Suppl. Relief"] at 2, ECF No. 3). Along with his Complaint, Wallace filed a Motion to Proceed In Forma Pauperis. (ECF No. 2). On August 30, 2019, Wallace filed a Motion for Appointment of Counsel. (ECF No. 4). On October 16, 2019, the Court granted Wallace leave to proceed in forma pauperis; denied his request to appoint counsel; directed the Clerk to withhold service; and instructed Wallace to supplement his Complaint, identifying the people allegedly responsible for his injuries, the nature and dates of the medical care he received, and facts supporting his claims that Defendants acted wrongfully. (ECF No. 6). Wallace supplemented his Complaint on November 18, 2019 and January 16, 2020, adding McDonough, Pellerin, and Dr. Meski as Defendants.[4] (ECF Nos. 7, 8). Defendants have not been served.

## II.   DISCUSSION

### A.   Standard of Review

To protect against possible abuses of the in forma pauperis statute, this Court is required to dismiss any claim by an indigent litigant which fails to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff

---

[4] In his Supplemental Complaint, Wallace made factual allegations against McDonough, Pellerin, and Dr. Meski but did not assert any causes of action against them.

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd sub nom. Goss v. Bank of Am., NA, 546 F.App'x 165 (4th Cir. 2013).

At the same time, the Court is mindful of its obligation to liberally construe the pleadings of pro se litigants. See Erickson v. Pardus, 551 U.S. 89, 94 (2007). In evaluating a pro se complaint, a plaintiff's allegations are assumed to be true. Id. at 93 (citing Twombly, 550 U.S. at 555–56). However, liberal construction does not mean that the Court can ignore a clear failure in the pleading to allege facts setting forth a cognizable claim. See Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990); see also Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985) (stating a district court may not "conjure up questions never squarely presented."); Small v. Endicott, 998 F.2d 411, 417–18 (7th Cir. 1993) (noting court is not required to construct a complainant's legal arguments).

**B.  Analysis**

To state a claim under § 1983, a plaintiff must allege (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a "person acting under the color of state law." West v. Atkins, 487 U.S. 42, 48 (1988); see also Davison v. Randall, 912 F.3d 666, 679 (4th Cir. 2019). Section

1983 "'is not itself a source of substantive rights,' but provides 'a method for vindicating federal rights elsewhere conferred.'" Albright v. Oliver, 510 U.S. 266, 271 (1994) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see Safar v. Tingle, 859 F.3d 241, 245 (4th Cir. 2017). A defendant may not be held liable under § 1983 unless the defendant "acted personally in the deprivation of the plaintiff's rights." Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977).

Here, Wallace alleges negligence against Defendants PGCDC, Armark, and Corizon. However, this state law claim raises neither a federal nor constitutional violation sufficient to state a § 1983 claim. Moreover, PGCDC is a building, not a "person." Inanimate objects such as buildings and facilities are not persons subject to suit under § 1983. See Allison v. California Adult Auth., 419 F.2d 822, 823 (9th Cir. 1969) (explaining that the California Adult Authority and San Quentin Prison were not "person[s]" subject to suit under § 1983); Gottleib v. Baltimore Cty. Det. Ctr., No. RDB-16-51, 2016 WL 6072348, at *1 n.1 (D.Md. Oct. 13, 2016). Accordingly, Wallace has failed to state a § 1983 claim against PGCDC.

Additionally, Aramark, a corporation that contracts to provide food services to penal institutions, is a private company that may be held liable under § 1983 "when the state has delegated a traditionally and exclusively public function to a private actor." DeBauche v. Trani, 191 F.3d 499, 507 (4th Cir. 1999). Because providing food service at a prison or jail is a traditional government function, a private company such as Aramark under contract to provide such a necessity to detainees or inmates can be deemed a state actor. See, e.g., Coleman v. Aramark, 31 F.App'x 808, 809 (4th Cir. 2002) (assuming without deciding that

Aramark acted under color of state law for purposes of § 1983 by "performing the traditional governmental function of providing food service at the jail"); Mozden v. Helder, No. 5:13-cv-5160, 2014 WL 2986711, at *2 (W.D.Ark. July 2, 2014) (collecting cases holding that prison food service providers are state actors because "the food service provider has assumed the state's constitutional obligation to provide a nutritionally adequate diet to inmates"). However, to the extent Wallace intends to hold Aramark liable under a theory of respondeat superior, the doctrine does not apply in § 1983 actions. See Monell v. Dep't of Soc. Servs. of the City of New York, 436 U.S. 658, 691 (1978); Rizzo v. Goode, 423 U.S. 362, 370–71 (1976). Thus, Aramark is not subject to suit under § 1983.

To the extent Wallace alleges an Eighth Amendment claim against Dr. Meski and Corizon, the claims must be dismissed. The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. Gregg v. Georgia, 428 U.S. 153, 173 (1976); see also Hope v. Pelzer, 536 U.S. 730, 737 (2002); Scinto v. Stansberry, 841 F.3d 219, 225 (4th Cir. 2016); King v. Rubenstein, 825 F.3d 206, 218 (4th Cir. 2016). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." De'Lonta v. Angelone, 330 F.3d 630, 633 (4th Cir. 2003) (citing Wilson v. Seiter, 501 U.S. 294, 297 (1991)); accord Anderson v. Kingsley, 877 F.3d 539, 543 (4th Cir. 2017). The United States Supreme Court has recognized that denial of medical care constitutes cruel and unusual punishment because "in the worst case, it can result in physical torture, and, even in less serious cases, it can result in pain without penological purpose." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). To state an Eighth Amendment

claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants, or their failure to act, amounted to deliberate indifference to a serious medical need. See Estelle v. Gamble, 429 U.S. 97, 106 (1976); see also Kingsley, 877 F.3d at 543.

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed to either provide it or ensure it was available. See Farmer v. Brennan, 511 U.S. 825, 834–37 (1994); see also Heyer v. U.S. Bureau of Prisons, 849 F.3d 202, 209–10 (4th Cir. 2017); Rubenstein, 825 F.3d at 218; Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008). Objectively, the medical condition at issue must be serious. See Hudson v. McMillian, 503 U.S. 1, 9 (1992) (concluding there is no expectation that prisoners will be provided with unqualified access to health care); Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014). "A 'serious medical need' is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Heyer, 849 F.3d at 210 (quoting Iko, 535 F.3d at 241); see also Stansberry, 841 F.3d at 228 (failure to provide diabetic inmate with insulin where physician acknowledged it was required is evidence of objectively serious medical need).

The subjective component requires "subjective recklessness" in the face of the serious medical condition. See Brennan, 511 U.S. at 839–40; Kingsley, 877 F.3d at 544. Under this standard, "the prison official must have both 'subjectively recognized a substantial risk of harm' and 'subjectively recognized that his[/her] actions were inappropriate in light of that risk.'" Kingsley, 877 F.3d at 545 (quoting Parrish ex rel. Lee

v. Cleveland, 372 F.3d 294, 303 (4th Cir. 2004)); see also Rich v. Bruce, 129 F.3d 336, 340 n.2 (4th Cir. 1997) ("True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk."). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" Brice v. Va. Beach Corr. Ctr., 58 F.3d 101, 105 (4th Cir. 1995) (quoting Farmer, 511 U.S. at 844). The subjective knowledge requirement can be met through direct evidence of actual knowledge or through circumstantial evidence tending to establish such knowledge, including evidence "that a prison official knew of a substantial risk from the very fact that the risk was obvious." Stansberry, 841 F.3d at 226 (quoting Farmer, 511 U.S. at 842).

Here, Wallace does not allege sufficient facts to support a claim that Dr. Meski acted with deliberate indifference to his serious medical needs. Rather, Wallace alleges that Dr. Meski's conduct amounted to negligence and criticizes Dr. Meski's examination, treatment, and analysis of his x-ray. As a preliminary matter, neither malpractice nor negligence amount to a claim of constitutional significance. See Estelle, 429 U.S. at 105–06. Additionally, "[d]isagreements between an inmate and a physician over the inmate's proper medical care" are not sufficient to raise an Eighth Amendment claim pursuant to § 1983. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). At bottom, Wallace's Complaint fails to state an Eight Amendment claim against Dr. Meski, and the claim must be dismissed.

Similarly, Wallace has failed to state an Eighth Amendment claim against Corizon,

PGCDC's private contractual medical provider. Corizon may be held liable under § 1983 only to the extent it implements a custom or policy that causes a violation of the Constitution or laws of the United States, such as a policy that causes deliberate indifference to serious medical needs. See Austin v. Paramount Parks, Inc., 195 F.3d 715, 727–28 (4th Cir. 1999); Monell, 436 U.S. at 691. Wallace does not allege that Corizon implemented any customs or policies likely to result in the purportedly inadequate medical care he received. Accordingly, Wallace's § 1983 claim against Corizon must be dismissed.

Lastly, to the extent Wallace attempts to hold McDonough and Pellerin responsible under a theory of supervisory liability, his claims fail. As to McDonough, Wallace alleges that she is responsible for the maintenance of the kitchen and detainee safety. Aside from that conclusory assertion, Wallace fails to allege facts demonstrating that McDonough had actual or constructive knowledge of a subordinate's actions that posed a pervasive and unreasonable risk of constitutional injury, or that there was an affirmative causal link between any purported inaction and the alleged constitutional injury. See Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (setting forth elements necessary to establish supervisory liability under § 1983). Similarly, Wallace does not allege personal involvement by Pellerin or any other facts supporting supervisory liability. Consequently, the Complaint fails to allege a § 1983 claim based on supervisory liability against McDonough or Pellerin.

### III.    CONCLUSION

For these reasons, the Court concludes that the Complaint fails to state a cognizable federal claim and must be dismissed pursuant to 28 U.S.C. §1915(e)(2)(B)(ii). To the extent Wallace may have state law claims for negligence or medical malpractice,

they are dismissed without prejudice. A separate Order follows.

Entered this 24 day of April, 2020.

/s/
George L. Russell, III
United States District Judge
